IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

*IN RE HAGUE CHILD ABDUCTION APPLICATION*

| | |
|---|---|
| MAXIM DROZDOV,<br>Petitioner,<br><br>and<br><br>ANNA DROZDOVA,<br>a/k/a ANNA DONALDSON<br>Respondent.<br><br>Serve: 6927 Waterman Avenue<br>St. Louis, Missouri 63130 | Case No. 4:10-CV-1002 |

## VERIFIED PETITION FOR RETURN OF CHILD UNDER THE HAGUE CONVENTION

COMES NOW Maxim Drozdov ("Petitioner") and for his Verified Petition for Return of Child under the Hague Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980, and the International Child Abduction Remedies Act, 42 U.S.C. 11601 et. seq., states as follows:

**1.0  PREAMBLE**

1.1  This petition is brought by Petitioner against Anna Drozdova, a/k/a Anna Donaldson ("Respondent") under The Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980 (the "Hague Convention" or the "Convention"), and the Federal International Child Abduction Remedies Act, 42 U.S.C. §11603(b) ("ICARA").

1.2  The Hague Convention came into effect for the United States on July 1, 1988 and came into effect between the United States and England on July 7, 1988. England is the

3406973

country of habitual residence of the child that is the subject of this action.

1.3   The objects of the Hague Convention are:

   1.3.1   To secure prompt return of children wrongfully removed to or retained in any contracting state (Article 1(a)); and

   1.3.2   To ensure that rights of custody and of access under the law of one contracting state are effectively respectively respected in the other contracting states (Article 1(b)).

1.4   The child for whom this Petition is filed and his date of birth is:

   1.4.1   CHILD A. A minor child, born on the 4th day of May, 2000 (aged 10 years) in the City of London, England, who will be sixteen years of age on May 4, 2016, a period of five years after the date of filing of this Petition.

   1.4.2   The child is a citizen of the Netherlands, but is a legal resident of the United Kingdom where he lived his entire life prior to his wrongful removal.

2.0   **JURISDICTION AND VENUE**

2.1   This Court has jurisdiction under 42 U.S.C. §11603, which provides that both State and Federal courts shall have concurrent original jurisdiction over any action arising under the Hague Convention.

2.2   A decision under the Hague Convention is not a determination of any child's custodial arrangements pursuant to Article 19 of the Convention and 42 U.S.C. §11601(b)(4), which provides that, "[t]he Convention and this chapter empower courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims."

2.3   Venue is proper in this Court under 42 USC §11603(b), which provides that any person initiating judicial proceedings under the Hague Convention for the return of a child or for

2

3406973

  arrangements to organize or secure the effective exercise of rights of access to a child may do so commencing a civil action by filing a petition for the relief in any court that has jurisdiction of the action and that is authorized to exercise its jurisdiction where the child is physically located when the petition is filed.

2.4 On information and belief, Petitioner believes the child who is the subject of this action is currently physically located within the jurisdiction of this Court, specifically in St. Louis, Missouri.

2.5 In support of this Petition, Petitioner is also filing herewith an Informational Brief that explains the purpose and mechanics of the Hague Convention.

3.0 **STATUS OF THE PETITIONER AND CHILD**

3.1 Petitioner has rights of custody of the subject child within the meaning of Articles Three and Five of the Hague Convention in that Petitioner is the natural father of the child.

3.2 Petitioner and Respondent were both born in Russia. Respondent is a Russian citizen, while Petitioner is a citizen of both the Netherlands and Russia.

3.3 Petitioner has resided in the United Kingdom, at various times, beginning on or around 1984.

3.4 Respondent has resided in the United Kingdom, at various times, beginning on or around 1997.

3.5 The parties were married in Valletta, Malta, on March 28, 1998.

3.6 After their marriage, the parties returned to the United Kingdom to live.

3.7 The minor child that is the subject of this action was born in the United Kingdom and lived his entire life in the United Kingdom prior to his wrongful removal to the United States.

3.8 Petitioner has parental responsibility rights under the law of the United Kingdom,

specifically Section 2(1) of the Children Act, 1989. *See* Exhibit 1 (Correspondence from International Child Abduction and Contact Unit, dated March 24, 2010 and Provisions of English Law).

3.9  Pursuant to Section 1 of the Child Abduction Act of 1984 a parent can not remove a child from the United Kingdom without the consent of the other parent. *See* Exhibit 1.

3.10 Pursuant to Section 1 of the Child Abduction Act of 1984, Petitioner has the shared right or *ne exeat* right to decide the country of the minor child's residence. *See* Exhibit 1.

3.11 On May 11, 2007, the parties were divorced by a Chief Judge of the District Court of Justice in the City of Moscow, Russian Federation. *See* Exhibit 2 (May 11, 2007 Divorce Agreement).

3.12 Petitioner retained his parental rights to care for the child and share time with the child. In addition to guaranteeing substantial time with his son, the parties agreed that Respondent would not interfere with Petitioner's responsibilities towards his child's education. *See* Exhibit 2.

3.13 Because the divorce had been difficult, the parties further promised "to cease all disputes so that their divorce does not have a negative influence on their son's education, to turn all parental attention towards their son so that he does no suffer from moral or psychological trauma or any other form of prejudice." *See* Exhibit 2.

3.14 In addition to the agreed to rights of custody under the Divorce Agreement, Petitioner retained full parental responsibility rights under English law, which are full custody rights within the meaning of the Hague Convention. *See* Exhibit 1.

3.15 Prior to the wrongful removal and retention, Petitioner exercised and sought to exercise his rights of custody of the child within the meaning of Articles Three and Five of the Convention.

4

3406973

3.16   England is the child's country of habitual residence within the meaning of Article Three of the Hague Convention. The child was born in England. England was his home at all times prior to, and as of the date of, his wrongful removal.

4.0   **CONCEALMENT, REMOVAL AND RETENTION BY RESPONDENT**

4.1   As the child's natural father, Petitioner has parental responsibility rights, which are recognized as custody rights within the meaning of the Hague Convention.

4.2   On information and belief, sometime after Respondent's divorce, Respondent married Brian Donaldson.

4.3   Starting in 2008, Respondent began trying to conceal the child from Petitioner—restricting Petitioner from spending time with his son and otherwise frustrating Petitioner's efforts to communicate or talk with his child—and failed to disclose the location of the child.

4.4   Petitioner attempted to resolve these difficult child custody issues with Respondent. Petitioner repeatedly sent correspondence to Respondent seeking to prevent further concealment and to allow him to be with his child. Respondent ignored Petitioner's correspondence and attempts to resolve these custodial issues.

4.5   Notwithstanding Respondent's efforts to keep the child from Petitioner, Petitioner has paid child support for his son pursuant to section 4.2.1 of the Divorce Agreement. *See* Exhibit 2.

4.6   On February 9, 2010, Petitioner's English solicitor sent a letter to Respondent's English solicitor attempting to prevent further concealment and to restore Petitioner's child to him. *See* Exhibit 3 (February 9, 2010 and February 17, 2010 Correspondence).

4.7   Respondent and her solicitor failed to respond.

4.8   On February 17, 2010, Petitioner's solicitor sent another letter to Respondent's solicitor

5

3406973

|   |   |
|---|---|
|   | attempting to prevent further concealment and to restore access to his child and indicated that "if you fail to respond, our client shall have no alternative but to take the matter up with the Family Court in England. . . ." *See* Exhibit 3. |
| 4.9 | On February 22, 2010, Respondent's solicitor responded that they were in receipt of the earlier correspondence and "in the process of taking our client's instructions." *See* Exhibit 4 (February 22, 2010 Correspondence). |
| 4.10 | On March 3, 2010, Petitioner's solicitor sent another letter to Respondent's solicitor attempting to prevent further concealment and to restore access to his child and expressed the hope that Petitioner would not need to resort to the Family Court in England. *See* Exhibit 5 (March 3, 2010 Correspondence). |
| 4.11 | On March 11, 2010, Petitioner learned of the wrongful—and secret—removal when Respondent's solicitor informed Petitioner that he could call his child at a St. Louis cell-phone number and correspond with his child using Brian Donaldson's address in St. Louis, Missouri. *See* Exhibit 6 (March 11, 2010 Correspondence from Respondent's counsel). |
| 4.12 | On information and belief, Respondent absconded with the child sometime in mid-February, 2010. |
| 4.13 | Prior to the wrongful removal, Petitioner had no idea that Respondent was planning to abscond with their child. Respondent never requested Petitioner's permission to relocate the child to the United States. |
| 4.14 | Respondent secretly and wrongfully removed the child from England and subsequently concealed his whereabouts. |
| 4.15 | Petitioner never consented to or authorized the child's removal on or about mid-February, 2010, nor the child's retention away from his habitual residence of London, England. |

6

3406973

4.16   Upon learning that his child may be in the United States, on March 16, 2010, Petitioner completed an application for assistance with the International Child Abduction and Contact Unit ("ICACU") of England to secure the return of his child under the Hague Convention.  *See* Exhibit 7 ("Hague Application"), which is incorporated into this Petition herein.

4.17   On March 24, 2010, the ICACU submitted the Hague application to the United States' State Department.

4.18   On or about April 6, 2010, the United States' State Department sent a letter to Respondent requesting that she voluntarily return with the child to the United Kingdom and provide her response by April 21, 2010.  *See* Exhibit 8 (Voluntary Return Letter).

4.19   On or about April 19, 2010, Respondent's Missouri counsel responded to the voluntary return letter indicating that Respondent would not return the child to the United Kingdom, asserting that the removal was not wrongful because the habitual residence of the child is now the United States.  *See* Exhibit 9 (Refusal to Return Letter).

4.20   After receiving Respondent's response that she refused to voluntarily return, the United States' State Department assisted Petitioner in finding legal representation and provided the Hague Application to the law offices of Bryan Cave LLP.

4.21   Petitioner has not seen his child since he was wrongfully removed from England.

4.22   Respondent's abduction and retention of the child is wrongful within the meaning of Article Three of the Hague Convention because Petitioner's rights of custody were violated.

4.23   Respondent is now and has been wrongfully retaining the child from Petitioner and the child's country of habitual residence.  Respondent is believed to be currently living with the child in St. Louis, Missouri.

3406973

5.0   **RELIEF REQUESTED**

5.1   Petitioner requests the following relief issue either immediately or at the expedited final hearing in this matter, or at such other time as may be appropriate:

    5.1.1   The Court immediately return the child to Petitioner or to an agent of Petitioner pursuant to the Proposed Order attached as Exhibit 10, so that the child can return to his home country of England; and

    5.1.2   The child's passports and all other documents necessary for the child's departure to England be immediately returned to Petitioner, if they have not been already; and

    5.1.3   Order Respondent to pay Petitioner's necessary expenses including court costs, legal fees, foster home or other care expenses, and any transportation costs incurred for the child's return pursuant to Article 26 of the Convention and 42 U.S.C. §11607 upon final submission of those costs, fees and expenses, which Petitioner may amend from time-to-time, reserving jurisdiction for the taxation of additional expenses incurred after that time.

BRYAN CAVE, LLP


　/s/  Christopher J. Schmidt
Christopher J. Schmidt   #53362
Herbert R. Giorgio, Jr.   #58524
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, Missouri  63102
(314) 259-2616 - telephone
(314) 552-8616 – facsimile
cjschmidt@bryancave.com
herb.giorgio@bryancave.com


*ATTORNEYS FOR PETITIONER*

## VERIFICATION

COUNTRY OF ENGLAND   )
                     )
CITY OF LONDON       )

MAXIM DROZDOV, of lawful age, being first duly sworn upon oath states:

Affiant is the Petitioner herein, states and verifies that Affiant is familiar with the contents of the foregoing Petition and that the statements, allegations, and other matters contained in it are true and correct.

_____
Petitioner Maxim Drozdov

**SWORN** by the said **MAXIM DROZDOV** at 9 New Square, Lincoln's Inn
In the County of London, WC2A 3QN
This 1st day of June 2010

Before me:

_____
Solicitor
MATTHEW JAMES YATES

3406973

10